At the outset, Judge Black and I wanted to welcome again and introduce to you our visiting judge, our friend and colleague, Judge Jane Rustani, who was appointed by President Reagan in 1983 to the United States Court of International Trade in New York, where she served with great distinction. She was the chief judge of that court from 2003 to 2010, and we've had the 20 years. We are delighted to have her and wanted, again, Judge Rustani to welcome you to our court. Two other very brief observations at the outset before we begin. For those of you who may not be familiar with our practices and procedures, you will note the lighting system that we have, the timing system that we have. Green light, of course, means you may proceed. Yellow is a two-minute warning. Red means your time is up, and we'd be much appreciative when that light goes on if you could bring your remarks to a conclusion. Third and last observation, again, as you proceed with your argument, you may safely assume that we've had a chance to look at the record as well, so feel free to go right to the heart of your argument. With that, we'll begin with the first case, which is the United States v. Leon Carter. Good morning, and may it please the Court. My name is Amy Lee Copeland, and I represent the appellant, Leon Carter. Forty-one days ago, I would have argued this case in an entirely different manner, because forty days ago, a prior panel decided United States v. Moss. So as I stand here before you today, forty days after Moss, I believe this case really is about today two different jurisprudential doctrines, the law of the case doctrine and the prior panel precedent rule. As for the form of the law of the case doctrine, yes, in a 2016 appeal brought by the government, Carter cross-appealed whether he was eligible as an armed career criminal or the ACCA Act at all. He had a different trial counsel, so it was plain error review. It was not an argument raised before the trial court. This Court found no plain error in Carter's ACCA status based on the lack of binding precedent. On remand, where the government prevailed on this appeal, I preserved this argument. No one cited law of the case, not the government, not the probation officer, not the court. I disclosed the fact of the court's opinion to the court, of appeal brief either. So there seems to be little doubt that today you can apply the law of the case doctrine. But there is an exception where a controlling authority has since made a contrary decision of the law applicable to such issues, which brings us to the Moss case. That was decided on April the 4th. On April the 19th, I will note in the Moss case, the judge did withhold the mandate in that case. But there is internal operating procedure number two, rule 36, that says the status of the mandate doesn't affect whether a binding precedent is binding. This case has been published. It is noted on that. There is a side in the Fed Third. In any event, Moss has a published opinion that analyzed Georgia's aggravated assault statute, which requires a simple assault and a statutory aggravator. Here, Mr. Carter, my client, was convicted in 1992 under the Georgia aggravated assault statute. It does not discuss in any of the Shepard documents under which prong of simple assault he committed the crime. It simply just says he committed aggravated assault. The plea colloquy in its essence is a page and a half long. But in Moss, the panel decided that both prongs are divisible in both the simple assault and the statutory aggravator. And because it's not clear what type of simple assault it is, the Moss court would look to the least of the acts criminalized by the simple assault statute. And that would be 16- How do we square Moss with what the Supreme Court of the United States said in Wazin? Your Honor, in Wazin, that was a misdemeanor crime of domestic violence. It was, I believe, a 921A33 case. Wazin, in footnote four, specifically says it really isn't going to address any other type of case. And there it talks about, I think, section 16 of the Immigration and Naturalization Act. They were just addressing the case in front of it. Wazin does talk about how reckless- Yeah, what I want you to focus on specifically for me, and admittedly, we are talking about a different section. We're talking about 922G9. Yes, Your Honor. It was a misdemeanor crime of domestic violence that the Supreme Court dealt with in Wazin, which is not what we have here. But we have language that's pretty close, or no, not on all fours. But what I wanted you to help me with specifically was with the holding of the Supreme Court there, where they said, quite unambiguously, quote, a person who assaults another recklessly uses force no less than one who carries out that same action knowingly or intentionally. So the distinction is between accidental and volitional, and reckless conduct falls on one side of the equation, accidental or negligent behavior for use on the other. How do you stand on what the Supreme Court said in Wazin from what you have here? Your Honor, on several bases. Number one, Wazin seems to be very results-oriented. It does talk about the misdemeanor crime of domestic violence and how 34 states and the District of Columbia all have various misdemeanor assault statutes or misdemeanor domestic violence statutes that can be satisfied by a recklessness component. If Wazin were to apply the lea cal intentional force to these statutes, it would pretty much gut the entire 922 G9 system of whether or not a person would be convicted of a misdemeanor crime of domestic violence. And the majority opinion does start with that very fact, noticing how many different states have this particular recklessness component of the misdemeanor crime of domestic violence. Without a recklessness component read into these misdemeanor crimes of domestic violence, it simply wouldn't work. Congress would be regulating virtually a nullity. It would apply to so few of the states. It would only apply to 15, 16 of the states. Relying on Wazin, the Fifth Circuit said pretty unambiguously to commit the relevant assault under Georgia law, the defendant must intend to commit the act that causes the victim to feel reasonable apprehension of immediate violent injury, though the defendant need not intend to cause the apprehension itself. Such a mens rea requirement is more than enough to satisfy the low volitional conduct standard for the use of force. Why is that wrong? Your Honor, because Leocal talks about the use of violent and intentional force. It talks about a component. The misdemeanor domestic violence statute also does not contain any indication that it's against the person of another. When you look at the First Circuit's opinion, you look at the Fourth Circuit dissent, they talk about how that's very different. Castleman, even in the misdemeanor crime of domestic violence arena, has imported a different standard. You have to forceful touching to be an ACCA-eligible violent felony. But in the misdemeanor crime of domestic violence, it can just simply be an unwanted or an offensive touching. So the Supreme Court has always treated these misdemeanor crimes of domestic violence different than they have treated the intentional forceful conduct required for an ACCA felony. The point of the misdemeanor crime, and I know you know this, Your Honor, but the point of this is to keep people who have had problems with their spouses away from having guns to come back and kill somebody. ACCA is to keep people who have been repeatedly convicted of violent felonies and drug offenses from possessing firearms. This requires intentional volitional conduct. That has always been the rule from Leocal. Even Wazin realizes that when it says we're not trying to regulate that. That is a case for another day. And perhaps that is a case for another day in the circuit also. Under the prior panel . . . Right. But the focal point of my question was, how do I distinguish the logic? If you come back and you say that's different, the statutory framework is different, that holding cannot dispose of this case, it's not on all fours, I would agree with every one of those points. But what I don't understand is how we reject the force of the rationale, the logic. To use force recklessly is all that the law requires. That's the same thing the Supreme Court tells us as using force intentionally. The Supreme Court tells us that, though, in an entirely separate context. The Misdemeanor Domestic Violence Statute doesn't require a use of force against a person, and ACCA does. It just says that it has the use of force. So what's the use of force going to be if not against a person, against a tree? Some of the reckless cases do provide that. In Patterson, the Georgia Supreme Court case, that the recklessness component was discussed, the use of force was actually against a mobile home in Whitfield County. Somebody was driving a car toward a mobile home. Said it wasn't his fault, basically, that his ex-girlfriend and her son were standing in front of the mobile home. So with the recklessness component, it does talk about recklessness directed to other objects and not people specifically. Yes, Judge? I just have a question about the Georgia statute. Can it be satisfied by mere negligence? That would be my concern because it looks to what the victim is in reasonable apprehension of. And I was thinking of an example. How could you have something that satisfied A2 that still involved a firearm? And I was thinking about a gubernatorial campaign ad that was shown in Georgia over the 2018 election season. A gubernatorial candidate had a shotgun, and the barrel of the shotgun was pointed about six to eight inches away from a young man who was sitting there. And the candidate, his pitch was to date my daughters, what do you Anybody who has taken a gun safety course would know that you never point a gun at anybody, even if it's unloaded or not. But if this kid had been reasonably concerned for his safety, the Georgia Supreme Court would have allowed that to satisfy the aggravated assault statute because it's all victim oriented. And based on that, I think even that might be a negligence because you do know that you can't do that. My time is up. Unless there are further questions, I will sit down. Thank you. And you've reserved your full five minutes. May it please the Court. I'm Nancy Greenwood. I'm an assistant United States attorney out of the Southern District of Georgia. The distinction, Judge Marcus, that you're looking for is that there is no distinction in the Vosine case when the Vosine case says that the reckless use of force counts the same as the same amount of force as intentional or knowing use of force. And that is why the Vosine case is relevant to the analysis here as it was relevant to the analysis in Moss, but not addressed there. I see some logical problems, but if Vosine 1 came out before Moss and 2 is not on all fours, what can we do? Well, Your Honor, the reality is that under the Supreme Court case of Kamen v. Kemper Financial Services, appellate courts are given a few options when it comes to issues that have not been briefed. For instance, in Moss, the Vosine case wasn't briefed, but it was argued at oral argument. It was discussed there. The court was aware of it. But presumably, because it involves a circuit split and some areas of confusion, that court decided to consider the argument waived presumptively and issued an opinion without considering the Vosine case. Unfortunately, that court did not follow the Supreme Court's instruction in the Kamen case, where it asked that if courts are going to issue an opinion based on truncated law, not considering the entire scope of the law that may apply, that it should or refrain from issuing a binding opinion. And that's where the concern is here, and that's why we've petitioned for rehearing in Moss. But if Moss is the law of this circuit and it is, doesn't it resolve this case? Whether you think it was right or wrong, whether it's consonant with Vosine or not, it's controlling precedent. It occurred after, as Judge Rastani was referencing, the resolution of Vosine. Whether it was cited or not, it does seem to me to be on all fours with this case. Am I missing something? No, Your Honor, you're not missing that. The issue is that the Moss decision is at this juncture still an un, the resolution of Moss is I understand the mandate has not issued. And if that, if that decision is withdrawn or vacated prior to a decision being reached in this case. Well, then it would be no different if it hadn't decided the case that way at all. Correct. And that's why we think it's important to consider Vosine here and at a minimum for the government to certainly preserve the Vosine argument in this when they're applying Vosine to these sentence enhancers is this, that in the circuits that apply Vosine to find that reckless use of force is enough, what they're finding is the statutes that they're analyzing require an intentional act that led to the reckless use of force. Whereas the circuits that have decided not to find that that recklessness mens rea is enough are looking at statutes that require a reckless act that leads to the accidental use of force. And I think that that's an important distinction because if you look at the cases that the First Circuit is analyzing, those statutes, the assault and battery with a deadly weapon can encompass in their least culpable form DUI type offenses where individuals are injured. Well, that's so like the Leocal case. And that their argument is that the act of getting in the car drunk was reckless, but the injury of another was accidental. Counsel, and I heard your answer to the judge's question regarding Moss. So let me ask you a bottom line question. Yes, ma'am. In light of Moss, and if you were to ask the panel specifically to rule today and at the end of the oral argument, we ruled, what would you ask us to do? I would ask you to recognize that the Moss opinion presumptively deemed the Vosine argument waived by the parties and therefore did not consider it there. But it doesn't undermine the importance of Vosine in this jurisprudence. And therefore, this court, following the direction of Kamen v. Kemper Financial Services, is going to look beyond the legal theories presented by the parties, is going to consider the full scope of the analysis that's required for the Armed Career Criminal Act. And that would include Vosine. What do you mean by this presumptively didn't decide? I mean, did they say, we refuse to consider Vosine, it's waived? No, that's one of the concerns is that the Moss opinion is silent, but the oral argument, at the oral argument, Vosine was discussed. Okay, so they decided that it was distinguishable. Well, I mean, it's a different statute. And with against person or property language. So they thought it was distinguishable. Well, the discussion at the oral argument was not that it was distinguishable. It was that it was imperative that the parties who were arguing the case make the distinction between whether or not the 11th Circuit should follow the 1st and the 4th Circuit in its analysis, or whether it should follow the 8th, the 10th, the 6th, the other circuits that had considered it. So, and in fact, I'm the one who argued that opinion. And when I said, you know, if this court, if that panel were to find that recklessness was the standard required under Patterson, then certainly Vosine was the overlay that would apply and would allow George's aggravated assault to qualify. Let me cut to the chase and ask the question this way. Let's just assume for the purposes of my question that the mandate issues in Moss. Are we not bound to follow Moss in this case? And if the answer is no, is it because they didn't discuss Vosine? I think the answer is no. And it's because there's a Supreme Court decision out there that is, although not on all fours, is a, is extremely instructive on this issue and it was not dealt with. Even if you were right about the rationale, obviously Moss didn't rule in that way. So is the problem that Moss didn't discuss Vosine? I want you to assume again for the purpose of my question, mandate issues. What do we do? The mandate, let's just assume the mandate has issued on Moss. It's binding law. Does it not bind this court? Either it does or it doesn't. I think that under the precedent that exists, it would bind this court for this particular statute. But I think that, and that's why we've asked for that. So the bottom line is we would be obliged to follow it, rule against you and rule in your colleagues' favor. In this instant case you would, Your Honor. That's all we have in front of us, this instant case. It is, but what we know in the context of that the Moss opinion was only issued 40 days ago, that there is a petition rehearing in place that a judge has withheld the mandate. So all you're saying is we should wait until the mandate issues and see if it does. I think that that would be prudent. I also think that this court can still analyze Vosine, even if it doesn't apply it and recognize its importance, because I do believe that this is an issue that is going to recur, perhaps not under the Georgia aggravated assault statute, but with regard to manslaughter statutes and other statutes within the state of Georgia and elsewhere that are being applied. I think Palomino-Garcia is no longer sufficient precedent to be applying in these sorts of analysis. And that's why... Have to wait for a different case. You can't just run around analyzing things that you're not required to analyze. I mean, if we're bound by Moss, there's no point in us talking about what we happen to think of Vosine. We need a real case. Can I ask you the same question I asked for your opponent? Is Georgia assault statute truly about recklessness? Well, again, I mean, and that is, I think that is one of the reasons that Vosine has not come up in some of the earlier arguments is because it wasn't clear whether or not recklessness was enough. Now, Moss court has said recklessness is the standard. But I'm asking you whether the Georgia statute even requires recklessness. I'm asking you how the Georgia statute fits into all these things you've been talking about, about whether recklessness comes first or second, or what's the triggering thing. How does the Georgia statute meet it? The Georgia statute under Patterson states that in the Patterson case, the analysis there was an individual had driven a car toward an individual who was standing near a mobile home and pinned them in between that, between the vehicle and the mobile home. That particular defendant in challenging the aggravated assault on that state level was asking for a reckless driving lesser included offense jury instruction. The court there on the state court level indicated that that lesser included offense of reckless driving was the same standard that was applicable for the aggravated assault itself. And therefore, it wasn't going to give an additional jury charge, a lesser included recklessness jury charge, because recklessness is what was required for Georgia's aggravated assault statute. So under the Patterson case, Patterson states that recklessness is the same injury as the reckless driving offense. And therefore, that's where I believe the Moss court and the Georgia Supreme Court has come down that recklessness is the dissent that was written that talks about how Georgia's aggravated assault is really more of a strict liability crime and so forth. But that was the dissent. The opinion of the court, the Georgia Supreme Court, which this court obviously, you know, followed in its holding in Moss and would follow here, is that recklessness is the standard for Georgia's aggravated assault. And that's where Vosine becomes important. But until that decision was made, Vosine wasn't really in play. In the Moss case, the arguments were based on, again, the Moss arguing that strict liability was at work. Did the government cite Vosine in the briefing in Moss? No, Your Honor. But we did cite that active employment is what was required, not of force. And that's what is present and required in the aggravated assault statute. We didn't cite the Vosine specifically, but we distinguished between Leocal and we also talked about the Morales-Alonzo case that this court, in its published opinion, issued related to whether the aggravated assault, whether or not the Georgia's aggravated assault meets the enumerated definition in the guidelines. But in that situation, again, this court said that active employment is required. Active employment of the weapon was required under the aggravated assault statute. And that's the argument that the government made there. But at oral argument, we did argue the application of Vosine and the fact that if recklessness was determined to be the standard for aggravated assault, that Vosine would still carry the day for its use as an ACCA predicate. I think that, again, the important distinction when looking at the cases that have done so either under the rule of lenity, that there's too much confusion in the area to apply it. But again, in those cases, you were dealing with a reckless act that would lead to accidental use of force, more akin to Leocal. Whereas here, we've got a deliberate decision to endanger others under the Georgia aggravated assault statute, where an individual in their culpable way intends to commit an act towards another person that then causes the reasonable apprehension that they are going to incur a violent injury. And that is, it's interesting because the context was brought up by Ms. Copeland. And the reality is, is that the Supreme Court, possibly doing the exact same analysis it did with regard to misdemeanor domestic violence, may reach the same conclusion if it looked at aggravated assault statutes across the nation. The importance here is to just remember that the purpose behind this is to determine what enhancements apply when an individual has a prior violent history. Thank you. Thank you very much. Ms. Copeland, let me ask you a prefatory question. Sure. If I hear what your colleague is saying, it amounts to this. Moss didn't properly take into account the importance of recklessness as defined by the Supreme Court in Boisille. The statutes are close, even if not on all four. The rationale is identical. Therefore, since Moss' mandate has not yet issued, we ought to do nothing until the mandate issues. If the mandate issues, well, then you're right. She agrees, as she must. It's absolutely on all fours. If not, well, then we'll have to wait and see what happens. Is that a wise way to proceed? Your Honor, that is a difficult question, which is, I'm sure, why you're asking it to me. Even as a defense attorney, this is an extremely important issue. I understand that everybody disagrees about it. There is a circuit split. I suspect there is even a split among this circuit privately as to how this should be viewed. This is an important case. We have this case in front of us. What I suspect will happen with Moss, because of the withholding of the mandate, I have handled many appeals, and I have rarely seen a mandate withheld. I suspect that somebody will ask for in-bank rehearing. The government didn't ask for in-bank rehearing. It simply asked for panel rehearing. I think that that's probably going to happen. I think it's an important issue, and I think it will be decided by the entire Court. My problem today, and perhaps this is a very practical one, though, is as a litigant, it is difficult to have a case decided on an issue that has only been raised in letter briefs in response to a law of the case doctrine and then one filed about a week or two weeks prior to this argument. This should have been advanced. Under the prior panel precedent rule, it looks to an intervening Supreme Court decision. This isn't intervening. It was filed two years prior to the government filing its brief in this case. Based upon the analysis that I had, this is the statute, and this is the argument we have today. My question is a very simple one. What would you have this Court do? Yes, Your Honor. Would you have us wait until the mandate issues or not? I would have you wait until the mandate issues. Okay. I would. I didn't mean to cut you off. You still have some time. That would be my response. I understand the need for the uniformity of legal decisions. I suspect that if the Court were to write an opinion, I would envision it would be an opinion, and then if there were any difficulties with Moss, that would be taken forth in a dissenting or concurring opinion. Well, if the mandate had issued, the opinion could be three lines. Absolutely. It would be that simple. Nothing hard about it. It's squarely on point. If the mandate hasn't issued, then it's certainly nothing that binds us, at least not yet. Your Honor, actually, I was looking again at Internal Operating Procedure 2 to FRAP 36, the Court's own rule, effective mandate on precedential value of opinion. Under law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result. So it is binding. If there are no further questions. Thank you very much. I note that you were court appointed, and we very much appreciate you taking on the burden of well and vigorously representing your client. Thank you, Your Honor. It was a pleasure. And thank you as well, Ms. Greenwood, for your efforts, and we'll proceed to the next case.